883 F.2d 68
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
Eliza MULLINS, surviving divorced spouse of Roma Mullins, Respondent.
 No. 88-3115.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1989.
Decided Aug. 8, 1989.
 
 Priscilla Anne Schwab (George R. Salem, Solicitor of Labor, Donald S. Shire, Associate Solicitor for Black Lung Benefits, Michael J. Denney, Counsel for Appellate Litigation, Office of Solicitor, U.S. Department of Labor on brief) for petitioner.
 Mark Arthur Robinson for respondent.
 Before K.K. HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The Director, Office of Workers' Compensation Programs, appeals the Benefits Review Board's order affirming the decision of the Administrative Law Judge to award survivor benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq., to Eliza Mullins, divorced spouse of deceased miner Roma Mullins.[1] We affirm the Board's order, although on a different ground.
 
 
 2
 The ALJ found that in January 1970 Mr. Mullins filed a claim for benefits under Part B of the Act, 30 U.S.C. Sec. 921-925, and was found entitled some time after his death on May 13, 1971. His estate received a lump sum payment. Larry W. Mullins, as a minor child of a disabled miner, received benefits under Part B until June 1975. Mrs. Mullins did not file her claim for black lung benefits until July 11, 1975. If she had applied for benefits within six months of her husband's death she would have been entitled automatically to benefits under Part B. 30 U.S.C. Sec. 922(a)(2); 20 C.F.R. Secs. 410.210; 410.231(b). But because Mrs. Mullins did not file until July 11, 1975, her claim must be determined under Part C of the Act, 30 U.S.C. Secs. 931-945, and its accompanying regulations. See 20 C.F.R. Sec. 725.212.
 
 
 3
 At the administrative hearing, Mrs. Mullins testified that her husband had black lung disease. Larry Mullins testified that his father had a breathing problem. No medical evidence was available. Mr. Mullins's medical records on file with the Social Security Administration had been destroyed.
 
 
 4
 The ALJ found that Mr. Mullins' receipt of benefits under Part B of the Act, as a matter of law, constitutes a determination that Mr. Mullins was disabled due to pneumoconiosis for purposes of proving Mrs. Mullins' entitlement to benefits under Part C of the Act. The Director argues that under 20 C.F.R. Sec. 725.212(a)(3)(ii) the ALJ was required to make a specific finding based on the evidence that Mr. Mullins was disabled due to pneumoconiosis at the time of his death, and he asks us to remand the case. We find that a remand is unnecessary. The record conclusively establishes that Mr. Mullins was disabled due to pneumoconiosis at the time of his death.
 
 
 5
 Part C claims are governed by interim regulations promulgated by the Secretary of Labor at 20 C.F.R. pt. 727. See Mullins Coal Co. v. Director, OWCP, 108 S.Ct. 427, 429 (1987). These regulations provide a presumption of entitlement to benefits for eligible survivors of a miner "who died on or before March 1, 1978" and "was employed for 25 or more years in one or more coal mines prior to June 30, 1971." 20 C.F.R. 727.204(a). The Director may rebut this presumption by proving that (1) the miner did not have pneumoconiosis, (2) the miner was not partially or totally disabled, or (3) any disability the miner did have was not caused by pneumoconiosis. 20 C.F.R. Sec. 727.204(a).
 
 
 6
 We find that Mrs. Mullins is entitled to invoke the 25-year presumption available to Part C claimants. The ALJ found that Mrs. Mullins was an eligible survivor because she was financially dependent on Mr. Mullins, and the Director does not challenge this finding. Moreover, Mr. Mullins died before March 1, 1978. Finally, we conclude, after careful examination of the record, that Mr. Mullins was employed in coal mines for at least 25 years.
 
 
 7
 One means of computing length of coal mine employment is to credit a miner for each quarter of the calendar year prior to 1978 in which at least $50 in wages were earned. Combs v. Director, OWCP, 2 BLR 1-904, 1-905 (1980). At the administrative hearing, the ALJ admitted into evidence an itemized statement of Mr. Mullins' earnings issued by the Social Security Administration and covering the requested period of January 1937 through December 1965. Claimant's Exhibit 2. The earnings statement establishes that from 1937 to 1965 Mr. Mullins was employed in coal mines for 89 quarters or 22 1/4 years.[2] Moreover, the ALJ credited testimony by Mrs. Mullins at the hearing that Mr. Mullins continued to work in coal mines until about one year before he died in May 1971. We find that this testimony establishes that after December 1965 Mr. Mullins worked at least another 2 3/4 years, making the length of his coal mine employment at least 25 years.
 
 
 8
 The record does not contain any evidence that rebuts the presumption. At the administrative hearing, Mrs. Mullins and her son testified that Mr. Mullins was in poor health before he died and the Director did not offer any contradictory evidence. The Director does not contend that any additional evidence would be offered if the case were remanded to the ALJ. The fact that Mr. Mullins' death certificate listed myocardial infarction as the probable cause of death does not rebut the presumption that Mr. Mullins was disabled due to pneumoconiosis. 20 C.F.R. Sec. 727.204(d)(4).
 
 
 9
 We recognize that it is the role of the ALJ, in the first instance, to weigh conflicting evidence in order to make findings of fact. But this case does not involve conflicting evidence, so remand to the ALJ is not necessary. We affirm the Board's order to award Mrs. Mullins benefits.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 After 25 years of marriage, the Mullinses were divorced in 1960. Four years later, they began living together again and continued to do so until the miner died in 1971
 
 
 [2]
 The earnings statement only reports wages for the second and fourth quarters for the year 1937 because employers were required to file reports only twice that year. It is clear from the amount of wages reportedly earned that Mr. Mullins was employed four quarters in 1937, not two